UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KURT ROBERT SMITH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 15-252-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOSEPH MEKO, Warden, Little Sandy | ) | **MEMORANDUM OPINION** |
| Correctional Complex, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kurt Smith has petitioned the Court for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [Record No. 1]  In accordance with local practice, the matter was referred to a United States Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  On February 26, 2016, Magistrate Judge Hanly A. Ingram issued a Recommended Disposition wherein he recommended that the petition be denied.  [Record No. 15]  Magistrate Judge Ingram also recommended that the Court decline to issue a Certificate of Appealability and deny Smith's pending motions for an evidentiary hearing and expansion of the record.  *Id.*  Smith has objected to the Recommended Disposition.[1]  [Record No. 16]

Having reviewed the record along with Magistrate Judge Ingram's Recommended Disposition, the Court concludes that Smith's habeas petition should be denied as

---

[1]        Because Smith filed objections, the Court will conduct a *de novo* review.  28 U.S.C. § 636(b)(1).

untimely.   Further, Smith is not entitled to an evidentiary hearing or a Certificate of Appealability.  His motion for expansion of the record will be denied as moot.

## I.

Smith does not object to Magistrate Judge Ingram's statement of the facts. [Record No. 16, p. 1 n.1]  The magistrate judge accurately summarized the relevant facts as follows:

> In 2001, Smith was convicted of murder and sentenced to life in prison. *See Smith v. Commonwealth*, No. 2002-SC-0293-MR, 2003 WL 22415620, at *1 (Ky. Oct. 23, 2003).  He expected to become parole-eligible in March 2021.  On August 21, 2009, a riot occurred at Northpoint Training Center ("NTC"), where Smith was detained.  During the riot, someone threw an object that struck Officer Jesus Cabrera.
>
> On March 22, 2010, a Kentucky grand jury indicted Smith on two charges stemming from the riot.  The first charge alleged that Smith committed third-degree assault against Officer Cabrera "by striking him with an object[] and causing physical injury" in violation of KRS § 508.025(b). The second charge alleged that Smith committed first-degree riot in violation of KRS § 525.020 by knowingly participating in a riot at NTC and "as a result of said riot substantial property damage occurred at Northpoint Training Center."  Both charges were Class D felonies.  In Kentucky, a Class D felony carries a prison term between one and five years.  Ky. Rev. Stat. § 532.020(1)(a).
>
> On July 8, 2010, the Commonwealth offered Smith a plea agreement, which he accepted pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) (permitting a defendant to plead guilty while maintaining his factual innocence).  The recommended sentence under the agreement was five years of imprisonment on each charge, but the sentences were "to run concurrently with each other and concurrently with the life sentence" he was already serving.  Accordingly, the trial court's judgment specified that Smith would receive five years on each charge, "[t]o run concurrently with each other and concurrently with [the] life sentence."  That judgment was entered August 13, 2010.
>
> Over two years later, Smith filed a *pro se* motion to vacate his judgment and sentence under Kentucky Rule of Criminal Procedure 11.42 ("R.Cr.

11.42"). Smith mailed the motion on October 23, 2012, and the Boyle Circuit Court filed it on October 30. Among other claims, Smith alleged that his attorney had "provided grossly ineffective assistance of counsel" in violation of *Strickland v. Washington*, 466 U.S. 668 (1984).

Smith's first *Strickland* claim in his state motion alleged that his lawyer misadvised him regarding the effect of his guilty pleas on his parole eligibility date. According to Smith, his attorney told him that obtaining concurrent sentences through the plea agreement would leave his parole eligibility date (stemming from his murder conviction) unchanged.

[Even though the trial court ordered that Smith's 2010 sentences run concurrently with each other and with his life sentence,] a Kentucky administrative regulation mandates that when a prisoner is convicted of a new crime while incarcerated, parole eligibility on the new conviction does not begin to accrue until the prisoner becomes parole-eligible on the original conviction. . . . 501 Ky. Admin. Regs. 1:030 § 3(4)(a).

Under this regulation, Smith's 2010 convictions added two years to his parole eligibility date, shifting it from March 2021 to March 2023. The parties do not contest the calculation of these dates. [In his R.Cr. 11.42 motion, Smith claimed that his attorney was ineffective because he did not inform him about the effect of 501 Ky. Admin. Reg. 1:030 on his parole eligibility.]

Smith's second relevant claim in his R.Cr. 11.42 motion was that his counsel rendered ineffective assistance on the assault charge by failing to "conduct a reasonable investigation that would have uncovered a meritorious defense." According to Smith, "certain discovery materials provided to a co-defendant in a related NTC riot case included an audio recording of an interview conducted with NTC Officer Jesus Cabrera." Smith claimed this interview "exonerated" him and "implicated another inmate." According to Smith, Cabrera told the interviewer[,] "I know it was Nolan . . . flung the rock; . . . hit me." Smith averred that, had he known about this recorded interview, he would not have pleaded guilty to the assault charge.

The state Circuit Court denied Smith's R.Cr. 11.42 motion on the merits without a hearing. . . .

Smith filed a *pro se* appeal of the Circuit Court's decision, and the Kentucky Court of Appeals affirmed. *Smith v. Commonwealth*, No. 2013-CA-000532-MR, 2014 WL 3722010 (Ky. Ct. App. July 25, 2014), reh'g

denied (Dec. 2, 2014).  On August 12, 2015, the Kentucky Supreme Court denied discretionary review.

On August 26, 2015, Smith, through counsel, filed a petition for a writ of habeas corpus in this Court.

[Record No. 15, pp. 1-5] (footnotes and internal citations to the record omitted)

Smith reiterates in his petition that his attorney was ineffective by giving him incorrect parole eligibility advice and by neglecting to show him the audio recording of Officer Cabrera's interview.  [Record No. 1]  He argues that the Kentucky Court of Appeals and the state trial court erred by rejecting those claims.  *Id.*  Smith has also filed a motion for an evidentiary hearing and a motion to expand the record to include all 3,000 pages of pre-trial discovery.  [Record No. 12]

## II.

Magistrate Judge Ingram recommended that Smith's petition be dismissed as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  [Record No. 15, p. 1]  The undersigned agrees that the untimeliness of Smith's petition merits dismissal.

The AEDPA establishes a one-year limitation period for filing petitions for habeas relief from state court judgments.  28 U.S.C. § 2244(d)(1).  Under the AEDPA,

[t]he limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . . or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

-4-

Because Smith did not directly appeal his conviction, the judgment became final on September 13, 2010, thirty days after the trial court entered its judgment. *See* Kentucky Rule of Criminal Procedure 12.04(3). If this was the latest triggering event, the one-year limitations period would have run before Smith even filed his R.Cr. 11.42 motion on October 23, 2012, seeking collateral review of the judgment in the trial court. However, Smith argues that he could not have discovered the factual predicate for either of his claims through the exercise of due diligence before November 14, 2011. [Record No. 16]

Generally, "the party asserting the statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run."[2] *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). However, if the petitioner contends that the limitations period began running when he discovered the factual predicate for his claim, the burden shifts to the petitioner to prove that he exercised due diligence. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). Working backward from the date Smith filed his habeas petition in this Court and tolling the period that Smith's collateral appeal was pending in state court, 28 U.S.C. § 2244(d)(2), Smith's petition is time-barred if he could have discovered the factual predicate for his claims before November 7, 2011.[3]

---

[2]   Smith appears to argue in his objections that Warden Meko forfeited his statute of limitations defense by failing to raise it in his response to the petition. [Record No. 16, p. 7] However, the record contradicts this assertion. The Warden did raise the AEDPA's one-year limitations period as his first defense in his initial response to Smith's petition. [Record No. 8, p. 15]

[3]   Fourteen days passed betweed the date the Supreme Court of Kentucky denied Smith's petition for discretionary review (August 12, 2015) and the date the date he filed his habeas petition in this Court (August 26, 2015). Three hundred 351 days passed between November 7,

A.      **Smith's Misadvice Claim**

Smith claims that, prior to November 14, 2011, he could not have discovered that his attorney gave him incorrect parole-eligibility advice, the factual predicate for his first ineffectiveness claim.  On that date, the Administrator of the Department of Corrections' Offender Information Services sent Smith a letter confirming that his parole eligibility date was March of 2023 ratther than March of 2021.  [Record No. 8-6, p. 7]  In his Recommended Disposition, the magistrate judge concludes that Smith actually discovered his attorney misadvised him much sooner than he claims.  [Record No. 15, pp. 12-13]  On September 26, 2011, Smith signed a Reclassification Custody Form, acknowledging that his new parole eligibility date was March 21, 2023.  [Record No. 8-6, p. 2]  At least one court has held that a reclassification letter with an inmate's correct parole-eligibility date may constitute the factual predicate for an ineffectiveness claim based on parole misadvice.  *Noland v. Crews*, No. 3:11-CV-195-CRS, 2013 WL 6331603 (W.D. Ky. Dec. 5, 2013), *appeal docketed*, No. 14-5628 (6th Cir. May 27, 2014).  Smith's objection that he was not required to investigate his parole eligibility prior to September 26, 2011 is inapposite.  [Record No. 16, pp. 14-17]  The question is whether Smith could have discovered that the advice he was given was incorrect prior to November 7, 2011.  Arguably, he was put on notice on September 26, 2011, making his habeas petition over a month late.

2011, and the date that Smith mailed his R.CR. 11.42 motion to the trial court.  Together, the two periods total 365 days.

-6-

Even if Smith could show that the reclassification letter was insufficient, the letter he received on October 11, 2011, certainly put him on notice that his attorney's representations were incorrect.  On October 10th, Smith sent the Kentucky Department of Corrections ("KDOC") a letter contesting the parole-eligibility date in his reclassification letter.  [Record No. 8-6, p. 3]  On October 11th, the KDOC's Institutional Offender Information Services responded.  *Id.* at 4.  The KDOC's letter specifically quotes and cites the controlling regulation, 501 Ky. Admin. Reg. 1:030.  *Id.*  It also shows the formula used to calculate his new eligibility date.  *Id.*

Smith argues that the October 11th letter was "materially inaccurate" because the letter omitted a portion of 501 Ky. Admin. Reg. 1:030 – Section 3(4)(a)(3).  [Record No. 16, p. 20]  The letter quoted a substantial portion of Section 3(4)(a) [Record No. 8-6, p. 4], but 501 Ky. Admin. Reg. 1:030 is a particularly lengthy regulation.  While Section 3(4)(a)(3) further clarified the effect of the regulation on Smith's eligibility date, the letter contained a sufficient explanation of that provision's effect to put Smith on notice for purposes of § 2244(d)(1)(D).  The letter summarized,

> In other words, if you have not yet met the parole board and you receive additional sentences for crimes committed within the institution, the parole date will be adjusted with each time that you receive an additional charge while incarcerated.  It doesn't matter if they are concurrent or not.

[Record No. 8-6, p. 4]  On October 18, 2011, Smith sent a memorandum to Offender Information Services, appealing the 2023 eligibility date.  [Record No. 8-6, p. 6]  The record shows that, by October 18, 2011, Smith knew that his 2010 convictions affected his parole eligibility contrary to his attorney's earlier advice.  And he had proof that the

KDOC's calculation of his eligibility date was consistent with the law.  Smith admits in his objections that his actual parole eligibility date is the factual predicate of his misadvice claim.  [Record No. 16, p. 19]  Under § 2244(d)(1)(D) of the AEDPA, the one-year period begins when the petitioner *could have* discovered the factual predicate.  In this case, Smith *actually* knew the factual predicate by October 18, 2011, at the latest.

On November 14, 2011, Smith received a letter from the KDOC denying his appeal.  [Record No. 8-6, p. 7]  Smith argues that a duly-diligent inmate would not be aware of his claim until he exhausted his administrative remedies with the KDOC.[4] [Record No. 16, p. 18]  For support, Smith relies on four non-binding cases from other circuits.  *See Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006); *Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2004); *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 280 (2d Cir. 2003).  As the magistrate judge explained, all four cases are distinguishable because all involve a direct challenge to an administrative decision.  [Record No. 15, pp. 15-17]  Smith's claim, on the other hand, challenges his attorney's effectiveness, not the KDOC's parole-eligibility calculation.

---

[4]     Smith originally raised the exhaustion issue in his reply brief.  [Record No. 11, pp. 2-7]  Even though the magistrate judge considering the issue on its merits, he initially determined that Smith waived the exhaustion issue by failing to raise it in the original petition.  [Record No. 15, p. 15]  The Court agrees with Smith on the waiver issue.  Because the statute of limitations is an affirmative defense, *Griffin*, 308 F.3d at 653, Smith was not required to argue the issue until the warden raised it in his response.  Neither case cited by the magistrate judge in support of his waiver theory involved a reply addressing an affirmative defense.  *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (The habeas petitioner's insufficiency of the evidence argument was waived when he raised it for the first time in his reply brief.); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir. 2008) (Argument was waived where it was raised for the first time at the Court of Appeals.).  Accordingly, the Court will consider Smith's exhaustion arguments on their merits.

Smith again cites all four cases in his objections but does not explain why the Court should apply cases that are not controlling and are clearly distinguishable. [Record No. 16, p. 18]  Having reviewed the cases, the undersigned agrees with the magistrate judge's determination.  The factual predicate for Smith's ineffective assistance of counsel claim is his counsel's misadvice, not the KDOC's parole-eligibility decision.  Not only *could* Smith have discovered that his attorney misadvised him prior to the KDOC's denial of his appeal on November 14th, the evidence suggests that he *did* discover that his attorney's advice was incorrect prior to that date.

Alternatively, Smith argues that the limitations period was tolled while his administrative appeal with the KDOC was pending.  Again, the cases on which Smith relies for this argument are distinguishable.  None involve ineffective assistance of counsel claims.  Instead, they concern a direct challenge to the administrative decision at issue.  For instance, in *Kimbrell v. Cockrell*, 311 F.3d 361, 363-64 (5th Cir. 2002), the Fifth Circuit held that the timely pendency of prison grievance procedures tolls the statutory period for habeas petitions where the petitioner challenged the prison's decision to deprive him of credit for good time served.  *See also Davis v. Commonwealth*, No. 2008-CA-000417-MR, 2009 WL 1098081, at *1 (Ky. Ct. App. Apr. 24, 2009) (Petitioner's motion challenged the KDOC's calculation of his sentence.); *Markham v. Clark*, 978 F.2d 993, 994 (7th Cir. 1992) (Inmate sought restoration of credit for good time through his habeas petition.); *Eads v. Hanks*, 280 F.3d 728, 728-29 (7th Cir. 2002) (same); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) (Inmate filed a habeas petition challenging a decision made by the parole board without first exhausting

his administrative remedies.); *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 471 (Ky. 2004) (Lessors cannot obtain judicial relief before exhausting their administrative remedies before the Revenue Cabinet.); *Thrasher v. Commonwealth*, 386 S.W.3d 132, 133 (Ky. Ct. App. 2012) (Inmate challenges the prison's calculation of his good time credit.).

Smith also relies on the case law surrounding the Prison Litigation Reform Act ("PLRA"). The Sixth Circuit has held that the PLRA's statute of limitation is tolled during the period that the petitioner seeks to exhaust his or her administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Smith contends that the same reasoning should apply to the AEDPA's limitations period. The magistrate judge noted that, unlike the PLRA, the AEDPA has its own tolling provision, 28 U.S.C. § 2244(d), and that language controls. [Record No. 15, p. 20] *See Woodford v. Ngo*, 548 U.S. 81, 100 (2006) ("Although the AEDPA and the PLRA were enacted at roughly the same time, they are separate and detailed pieces of legislation."). While Smith generally objects to the magistrate judge's entire analysis of § 2244(d) [Record No. 16, p. 1 n.1], he fails to offer any argument to rebut Magistrate Judge Ingram's treatment of this issue. Like the magistrate judge, the undersigned is not persuaded by Smith's comparison of the AEDPA to the PLRA.

Finally, Smith argues that § 2244(d)(2) tolls the statutory period for the duration of his administrative appeal. According to Smith, section 2244(d)(2) "permits tolling for review of a 'pertinent . . . claim.'" [Record No. 16, p. 24] Smith implies that his administrative appeal qualifies as a "pertinent claim." *Id.* However, Smith's argument

-10-

ignores the actual language of § 2244(d)(2).  Under this provision, the one-year period is only tolled by a "properly filed application for State post-conviction or other collateral review with respect to *the* pertinent judgment or claim."   28 U.S.C. § 2244(d)(2) (emphasis added).  This provision was clearly intended to toll the limitations period for the time that Smith's R.Cr. 11.42 motion, which addressed the same issues as his habeas petition, was pending in state court.  The KDOC's determination of Smith's parole eligibility date is not *the* judgment or claim in this case.  Nothing in the provision's language suggests that Congress intended it to toll administrative appeals of ancillary issues.  In short, Smith has not provided any authority that actually supports his tolling argument.

Smith also argues in his reply that Kentucky's exhaustion requirements were an impediment to his ability to file his habeas petition.  Under § 2244(d)(1)(B), the one-year statutory period can also begin to run on the day a state-created impediment to filing the habeas petition is removed.   However, as the magistrate judge observed in his Recommended Disposition, the statute specifies that the impediment must be "in violation of the Constitution or laws of the United States."  *Id.*  [Record No. 15, p. 21] Smith has presented no evidence or authority indicating that Kentucky's administrative exhaustion requirements violate the Constitution or federal law.   Further, he has not shown that Kentucky's exhaustion requirements impeded his ability to file this habeas petition.  Like his PLRA argument, Smith fails to address this issue in his objections.  Based on the statute's plain language, the undersigned agrees with the magistrate judge's conclusion that § 2244(d)(1)(B) does not apply.

The record plainly indicates that Smith could have known -- and most likely did know -- the factual predicate for his misadvice claim prior to November 7, 2011. As a result, when Smith filed his habeas petition in this Court on August 26, 2015, it was untimely.

### B.    Smith's Failure to Investigate Claim

Smith asserts that sometime after November 14, 2011, "another inmate who was also charged in the riot provided Smith with some of his own discovery, which included an interview with Officer Cabrera the day after the offense."   [Record No. 1, p. 4] According to Smith, Officer Cabrera stated that "an inmate named Nolan, not Smith" threw the rock that hit him.[5]   *Id.*   Smith does not dispute that the Commonwealth provided the audio recording to his attorney during pre-trial discovery.   Instead, Smith claims that his attorney never told him about the recording.   Further, he contends that he could not have discovered Officer Cabrera's statement prior to hearing about its existence from another inmate.

Relying on *Gillis v. United States*, 729 F.3d 641, 644-45 (6th Cir. 2013), the magistrate judge found that Smith had not provided sufficient evidence establishing the date on which he could have discovered the recording through the exercise of due diligence.   [Record No. 15, p. 22]   In his objections, Smith argues that *Gillis* is distinguishable and establishes a pleading requirement, not an evidentiary requirement. [Record No. 16, p. 4]   Smith also offers new evidence to support his timeline of events.

---

[5]     Smith's characterization of Officer Cabrera's statement conflicts with the actual recording.   However, for purposes of Smith's statute of limitations argument, the Court will presume that Smith's factual allegations concerning the recorded statement are true.

First, Smith attached to his objections an affidavit sworn to by Bobby Hoskins, the inmate who allegedly brought the recording to his attention. [Record No. 16-1] Hoskins claims that he told Smith about Officer Cabrera's statement "sometime after 2012." *Id.* at 2. Smith argues that Hoskins meant sometime during 2012 since Smith obviously was aware of the recording before he filed his R.Cr. 11.42 motion on October 23, 2012. [Record No. 16, p. 31 n.8] Smith also produced prison documents showing that Hoskins and Smith were housed at Boyle County Jail at the same time, and he included court documents that prove Hoskins received discovery in his case in 2012. [Record No. 16-1] While this evidence might establish that Hoskins did not tell Smith about the audio recording prior to November 7, 2011, the issue under § 2244(d)(1)(D) "is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004).

Smith argues that, because he was in prison, he only had access to the materials his trial counsel provided to him. [Record No. 16, p. 32] Moreover, he contends that he could not review discovery on a computer disc because he had no reliable access to a computer. *Id.* at 29. The Court concedes that Smith is entitled to some latitude, considering the "reality of the prison system." *Granger v. Hurt*, 90 F. App'x 97, 100 (6th Cir. 2004). Nevertheless, the record contradicts Smith's arguments that he could not have discovered the evidence earlier. Smith has not alleged, nor is there any evidence showing, that Smith asked to personally review his discovery before or after he entered his guilty plea. In fact, Smith admitted under oath that he did review the discovery with

-13-

his counsel and concluded that there was sufficient evidence for a conviction.   The

following exchange occurred during his plea colloquy with the trial judge:

> Court: After you did that [your counsel] went to the prosecutors and asked
> to show them what evidence they had against you.  What were they
> going to present to a jury if they had to go to trial – called the
> discovery.  I think there was about 3,000 pages or something like
> that at this point.  Did you get a chance to look at that discovery[?]
>
> Smith: Yes, I did.
>
> Court: So you know what the Commonwealth has and intends to show to
> the jury?
>
> Smith: Yes, sir.
>
> Court: Did [your counsel] go over that with you?
>
> Smith: Yes, sir.

[Record No. 8, pp. 5-6]  Smith contends in his objections that the trial court's reference to

3,000 *pages* of discovery did not put him on notice that the discovery contained an audio

recording.  [Record No. 16, p. 34]  Trial judges are not required to catalogue every piece

of discovery when conducting a plea colloquy.  The colloquy is significant because it

shows that Smith's attorney shared the discovery with Smith.  Smith has never alleged

that his attorney prevented him from viewing any discovery.  In other words, Smith has

not shown that anyone ever impeded him from accessing the information.  Additionally,

the magistrate judge is correct that Smith's story about Hoskins listening to the recording

in jail undermines Smith's argument that he could not have accessed listening equipment.

[Record No. 15, p. 24]

-14-

In *Townsend*, 99 F. App'x at 609, the petitioner similarly based his habeas claim on evidence included in his discovery materials.  Relying on § 2244(d)(1)(D), Townsend argued that he could not have discovered the police report at issue until his appellate counsel gave him all of his discovery materials after his right to appeal was denied.  *Id.* The Sixth Circuit concluded that Townsend's explanation did not support tolling under § 2244(d)(1)(D).  *Id.*   Smith argues in his objections that *Townsend* is distinguishable because it involves an actual innocence claim, not an ineffective assistance of counsel claim.  [Record No. 16, p. 33]  However, Smith has not provided an authority that is more on-point than *Townsend*.  Further, the fact that his substantive claims are different from Townsend's substantive claims does not render *Townsend*'s procedural analysis inapplicable.  The reasoning underlying the Sixth Circuit's conclusion in *Townsend* also applies here.  If the evidence was included in Smith's pretrial discovery, it stands to reason that he could have discovered it before November 7, 2011, absent a showing that his attorney or the prison refused to allow him access to the information.  Accordingly, *Townsend* is dispositive and Smith's reliance on § 2244(d)(1)(D) is misplaced.

### C.    Equitable Tolling

Smith alleged in his petition as an alternative argument that he is actually innocent and therefore entitled to the extraordinary remedy of equitable tolling on both of his ineffective assistance of counsel claims.  [Record No. 1, p. 8]  In the Recommended Disposition, Magistrate Judge Ingram gave a detailed, well-reasoned explanation outlining why Smith is not actually entitled to equitable tolling.  [Record No. 15, pp. 26-32]  In his objections, Smith expressly stated that he did not object to the magistrate

judge's equitable tolling analysis.  [Record No. 16, p. 1 n.1]  The undersigned agrees with the magistrate judge's determination that Smith is not entitled to equitable tolling.

### III.

Even if Smith's petition was timely, both of his ineffectiveness claims fail on their merits.  Under § 2254, habeas petitions based on the judgment of a state court must be denied "with respect to any claim that was adjudicated on the merits in State court" unless the adjudication –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court conducts a two-pronged analysis in reviewing ineffective assistance of counsel claims.  First, the Court determines whether the defendant has shown that his counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006).  Second, the defendant must show that there is a reasonable probability that, but for his counsel's unreasonable performance, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694; *Pough*, 442 F.3d at 966.  In the context of guilty pleas, the Supreme Court has modified the prejudice prong, requiring the defendant to prove that "there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

As Magistrate Judge Ingram observed, when a federal court reviews a § 2254 petition based on an underlying ineffectiveness claim, the two standards together (*Strickland* and § 2244(d)) require the federal court to give double deference to the state court's determination.  [Record No. 15, p. 35]  Smith devotes a substantial portion of his objections to explaining why the magistrate judge's application of double deference is inappropriate.  [Record No. 16, pp. 37-44]  He argues that the magistrate judge was actually required to engage in a more rigorous and careful analysis of Smith's substantive claims.  *Id.* at 37.  However, the magistrate judge based his application of the double deference standard on sound Supreme Court precedent.  In *Harrington v. Richter*, 562 U.S. 86, 105 (2011), the Supreme Court held that, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so."  (internal quotation marks and citations omitted)  The Court went on to explain that, "[w]hen § 2254 applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  Magistrate Judge Ingram correctly applied double deference to the state court's adjudication of Smith's ineffectiveness claims.

### A.    Smith's Misadvice Claim

Smith argues that the adjudication of his misadvice claim in state court resulted in a decision that was contrary to clearly-established federal law and involved an

unreasonable determination of the facts.  In other words, he contends that he is entitled to relief under both prongs of § 2254(d).  Notwithstanding this argument, Smith is not entitled to relief under § 2254(d)(1) because the resolution of his R.Cr. 11.42 motion did not depend on "clearly established federal law."  As Magistrate Judge Ingram noted, the Supreme Court has never held that an attorney was ineffective based on incorrect parole eligibility advice.  [Record No. 15, pp. 36-37]

Smith argues in his objections that the parole eligibility advice issue has been clearly established.  For support, he relies on Justice Alito's concurring opinion in *Padilla v. Kentucky*, 559 U.S. 356, 375 (2010), along with several non-binding cases from other circuits.  [Record No. 16, pp. 48-50]  Under § 2254(d)(1), "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks and citation omitted).  Even binding precedent from a federal circuit court does not constitute clearly-established federal law.  *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).  Accordingly, the cases Smith cites from other circuits are not dispositive for purposes of § 2254(d)(1).  And even if Justice Alito's concurring opinion set forth a specific legal rule applicable to Smith's case, that rule would not be "squarely established" since the concurrence did not garner a majority of the Supreme Court's votes.

In *Hill v. Lockhart*, 474 U.S. at 60, the Supreme Court found it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel."

-18-

In *Padilla*, the majority opinion held that an attorney's failure to inform his client about the possible deportation consequences of a guilty plea amounted to ineffective assistance. 559 U.S. at 368.  Smith contends that *Padilla*'s rule regarding deportation advice applies to all advice regarding collateral consequences (*i.e.*, advice regarding parole eligibility). [Record No. 16, pp. 49-50]  Smith cites to the majority decision in *Padilla* where the Court observed that the Supreme Court has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*."  *Id.*  Notably, Smith fails to acknowledge the next sentence in which the Court declined to address the issue, stating, "[w]hether this distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."  559 U.S. at 363.  In short, Smith's reliance on *Padilla* is misplaced.  While that case did involve a collateral issue, it did not involve the collateral issue at hand.  Because the parole eligibility advice issue has never been squarely addressed by the Supreme Court, Smith is not eligible for relief on his misadvice claim under § 2254(d)(1).

Smith is also not entitled to relief on his misadvice claim under § 2254(d)(2).  The Kentucky Court of Appeals rejected Smith's misadvice claim under the performance prong of *Strickland*.  *Smith*, 2014 WL 3722010, at *2.  Applying the appropriate double deference standard to the Kentucky Court of Appeals' decision, the magistrate judge concluded that the state appellate court's findings were not objectively unreasonable. [Record No. 15, p. 42]  Smith argues in his objections that the cases on which the magistrate judge relied for this conclusion were distinguishable.  [Record No. 16, p. 52]

-19-

However, even presuming that Smith could overcome § 2254's deferential standard of review and show that his counsel's performance was deficient under *Strickland*, his misadvice claims obviously fails under the prejudice prong.

Because the Kentucky Court of Appeals and the trial court resolved Smith's misadvice claim on the performance prong, neither court reached the prejudice prong. *Smith*, 2014 WL 3722010, at *2.  For claims that the state court did not adjudicate on the merits, reviewing courts apply a *de novo* standard of review, instead of AEDPA's double deference standard.  *See Nields v. Bradshaw*, 482 F.3d 442, 449-50 (6th Cir. 2007).  Even under a *de novo* standard of review, Smith has failed to meet his burden under the prejudice prong.  It is not enough for Smith to simply state that he would have rejected the plea deal and gone to trial but for his counsel's alleged error.  Smith admits that he must also show that a decision to reject the plea would be "rational under the circumstances." [Record No. 16, p. 55 (quoting *Padilla*, 559 U.S. at 372)].

Smith argues in his objections that he would have rejected the plea agreement because it put him in the worst possible position for parole eligibility.  [Record No. 16, p. 51]  But a rational person would have also considered the length of the actual sentence, especially since parole is not a guarantee regardless of eligibility.  Absent parole considerations, Smith's plea agreement provided for the shortest possible sentence.  The maximum penalty for Smith's 2010 convictions was ten years to run consecutively with his life sentence.[6]  However, Smith's attorney negotiated for his two new convictions to

---

[6]    Both of Smith's 2010 convictions were Class D felonies.  [Record No. 8-3, p. 1]  Ky. Rev. Stat. § 525.020(2); Ky. Rev. Stat. § 508.025(2).  In Kentucky, Class D felonies carry a

run concurrently with one another and with the life sentence he was already serving. Smith argues that the best possible sentence for parole purposes was two concurrent one-year sentences.  [Record No. 16, p. 51]  According to Smith, "[t]his would have resulted in a change to parole eligibility of 4.8 months," instead of two years.  *Id.*  Nevertheless, rejecting the plea agreement would have been objectively unreasonable.  The possibility of becoming parole eligible a year and half earlier is inconsequential when compared with the greater risk of ten additional years in prison.

Also, there is evidence in the record showing that Smith was subjectively unlikely to reject a guilty plea regardless of the consequences to his parole eligibility.  When the trial judge asked Smith during his plea colloquy whether he understood that his guilty plea "may affect parole eligibility," Smith answered that he did.  [Record No. 8, p. 8] "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Despite this warning, Smith still voluntarily pleaded guilty.  Because Smith has not proven prejudice, he is also not eligible for relief under § 2254(d)(2).

### B.    Smith's Failure to Investigate Claim

Smith alleges that his counsel was ineffective by failing to bring Officer Cabrera's recorded statement to his attention.  However, the Kentucky Court of Appeals concluded that his counsel's performance was not deficient under *Strickland*.  *Smith*, 2014 WL 3722010, at *2.  *See* Record No. 15, p. 44.  Smith argues that this decision was an

---

maximum of five years in prison.  Ky. Rev. Stat. § 532.060(d).  In these circumstances, a judge could have ordered them to run concurrently or consecutively.  Ky. Rev. Stat. § 532.110.

unreasonable application of *Strickland* under § 2254.  But according to the magistrate judge, the Kentucky Court of Appeals reasonably concluded that the audio recording, the sole piece of supposedly exculpatory evidence before it, was not in fact exculpatory. [Record No. 15, p. 45]  Accordingly, Smith's counsel did not err even if he did neglect to show the recording to Smith.

Smith argues in his objections that he is not required to prove that the recording would have exonerated him.  [Record No. 16, p. 59]  He is correct in this assertion. However, it is doubtful whether Officer Cabrera's statement, taken as a whole, would have helped Smith at all, had he gone to trial.  And an attorney's failure to uncover evidence that would not be dispositive at trial does not qualify as deficient performance.

According to Smith, Officer Cabrera "stated [in the recording] that he knew it was an inmate named Nolan, not Smith, who threw the rock that hit him." [Record No. 1, p. 4]  While Officer Cabrera did state that inmate Nolan threw a rock at him during the riot, he went on to say, "[a]nd maybe there was a couple other ones that I don't [], I mean, if I saw their face [sic] I'd know who they are, but I don't know them by name."  [Record No. 8, p. 28]  Smith's indictment alleged that Smith struck Officer Cabrera with an object. [Record No. 8-3, p. 1]  The fact that Nolan threw a rock at Officer Cabrera does not rule out the possibility that Smith was one of the others involved in the assault on Officer Cabrera.

According to his objections, "Smith's allegation that counsel had failed to investigate and discover exculpatory evidence, and that the defendant would not have pled guilty had that evidence been discussed with him, is sufficient to warrant relief

under *Strickland* and *Hill*." [Record No. 16, pp. 58-59] This argument, however, completely ignores the objective elements of the Supreme Court's decisions in *Strickland* and *Hill*. Since Officer Cabrera's statement failed to disprove any of the charges against Smith, his counsel did not act unreasonably by neglecting to bring it to his attention. Further, *Strickland* places the burden on Smith to prove prejudice, and Smith has not provided sufficient evidence that a rational person would have refused to plead guilty and have gone to trial, had he known about the audio recording. Smith questions the Court's ability to draw such a conclusion without reviewing the remaining 3,000 pages of discovery. [Record No. 16, p. 58] However, the fact that Smith agreed during his plea colloquy that he had reviewed those 3,000 pages indicates that they were sufficiently incriminating for a rational person to plead guilty. Smith offers no convincing evidence to the contrary. Therefore, the magistrate judge correctly concluded that the state appellate court's decision was reasonable, given the evidence offered by Smith.

Smith also argues that he is entitled to relief under § 2254(d) because the state court proceedings were not sufficient to reasonably adjudicate his claim. [Record No. 16, p. 60] Relying on *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007), Smith argues that the state court's adjudication of his failure to investigate claim is not entitled to AEDPA deference because it was based on an unreasonable application of law. But as explained above, the Court disagrees with the basic premise of this argument. Instead, the undersigned agrees with the magistrate judge that the state court did not unreasonable apply federal law to Smith's failure to investigate claim. Accordingly, the state court's

-23-

adjudication is entitled to deference, and Smith is not entitled to further factual discovery on habeas review as he claims.

## IV.

### A.      Motion for Evidentiary Hearing

Smith maintains in his objections that he is entitled to an evidentiary hearing. [Record No. 16, pp. 64-68]  The Court agrees with Magistrate Judge Ingram that Smith is not entitled to such a hearing.  [Record No. 15, p. 46-48]  In reaching this conclusion, the magistrate judge relied on § 2254(e)(2).   [Record No. 15, p. 47]  Where the habeas petitioner has "failed to develop the factual basis of a claim in State court proceedings," section 2254(e)(2) generally prohibits evidentiary hearings with limited exceptions.  28 U.S.C. § 2254(e)(2)(B).  Smith argues that § 2254(e)(2) does not apply since he diligently sought an evidentiary hearing in state court but was denied.  In *McFarland v. Yukins*, 356 F.3d 688, 712 (6th Cir. 2004), the Sixth Circuit did hold that the heightened standard of § 2254(e)(2) does not apply where the "petitioner was diligent in seeking a state evidentiary hearing" but his requests were denied.  The *McFarland* Court reasoned that such a petitioner had not failed to develop the factual basis of his claim.  *Id.*  Because the state court did deny his motion for an evidentiary hearing, Smith is correct that § 2254(e)(2) does not apply to him.  [Record No. 8-3, pp. 30-31.]

Smith asserts that his motion for an evidentiary hearing should be evaluated under the standard set forth in *Sawyer v. Hofabauer*, 299 F.3d 605 (6th Cir. 2002).  There, the Sixth Circuit held that a habeas petitioner is generally entitled to an evidentiary hearing if "he alleges sufficient grounds for release, relevant facts are in dispute, and the state

-24-

courts did not hold a full and fair evidentiary hearing." *Id.* at 610-11 (internal quotation marks and citation omitted).  Even under this more lenient standard, Smith does not qualify for an evidentiary hearing.  While the state court did not hold an evidentiary hearing, Smith has failed to allege sufficient grounds entitling him to any sort of relief.  After reviewing the evidence of record and construing all of Smith's factual claims as true, the Court finds that Smith has not met this burden.  Accordingly, his motion for an evidentiary hearing will be denied.

### B.    Motion for Expansion of the Record

Smith states in his objections that his motion for an expansion of the record is no longer required.  [Record No. 16, p. 1 n.1]  However, if the Court ordered an evidentiary hearing, Smith indicated that an expansion of the record would be necessary.  *Id.* at 69.  Because the Court will deny Smith's motion for an evidentiary hearing, Smith's motion to expand the record is moot and will also be denied.

### V.

The magistrate judge has recommended that this Court refuse to issue a Certificate of Appealability regarding any issue raised in this proceeding.  [Record No. 15, p. 48]  The Supreme Court has held that a habeas prisoner is only eligible to receive a Certificate of Appealability if he of she makes a

> substantial showing of the denial of a constitutional right, a demonstration . . . that includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks and citation omitted).  Smith relies heavily on *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003), where the Supreme Court held that the Certificate of Appealability standard "does not require a showing that the appeal will succeed" or even that "some jurists would grant the petition for habeas corpus."

Even considering *Miller-El*'s interpretation of the *Slack* standard, Smith still is not entitled to a Certificate of Appealability.  Reasonable jurists could not debate that Smith's claims are time barred.  Moreover, not only are Smith's claims time barred, they could also be dismissed on the merits.  The procedural bars to Smith's petition, combined with its substantive defects, results in the conclusion that this Court should not issue a Certificate of Appealability under the standards set forth in *Slack* and *Miller-El*.

## VI.

Having conducted a *de novo* review of the issues raised by Smith in his objections [Record No. 16] to Magistrate Judge Ingram's Recommended Disposition [Record No. 15], it is hereby

**ORDERED** as follows:

1.      The Recommended Disposition of Magistrate Judge Hanly A. Ingram [Record No. 15] is **ADOPTED** and **INCORPORATED**, in **PART**, as explained more fully above;

2.      Defendant Smith's objections [Record No. 16] to the Magistrate Judge's Recommended Disposition are **OVERRULED**, in **PART**, and **SUSTAINED**, in **PART**, as explained more fully above; and

3.      Defendant Smith's petition for writ of habeas corpus [Record No. 1] is **DENIED**.

4.      Defendant Smith's motion to expand the record and motion for an evidentiary hearing [Record No. 12] are **DENIED**.

This 11th day of April, 2016.



**Signed By:**

*Danny C. Reeves*   DCR

**United States District Judge**